YATES, Judge.
In June 1996, Bethany C. Harrison and Crystal Shelley, employees of the City of *349 Dothan, filed grievances with the City of Dothan Personnel Board, alleging that the City had violated its rules and regulations with respect to filling the vacant position of administrative assistant in the City’s fire department. Harrison contended that the vacancy had been declared an “emergency situation” for the sole purpose of filling it with a member of a racial minority and that neither she nor her qualifications were taken into consideration because she was not a member of a racial minority. Shelley alleged that she had been discriminated against in that, she claimed, the City’s Personnel Rules and Regulations and the Civil Service Act were disregarded in filling the position. Both also alleged that the position should have been filled from the in-house register of the current qualified City employees instead of by someone from the outside hired on a provisional basis.
Following a full evidentiary hearing, the Board entered orders denying both grievances, finding that Harrison and Shelley had “failed to present a substantial amount of evidence that supports the violation of the Personnel Rules and Regulations and the Civil Service Act in filling the vacancy of Administrative Assistant in the Fire Department.”
Harrison and Shelley appealed the Board’s decision to the circuit court, which remanded the matter to the Board, finding:
“[S]ubstantial evidence was presented to show that the City of Dothan violated its Personnel Rules and Regulations in the making of a Provisional Appointment and in the permanent filling of the administrative assistant position from an outside register despite the certification of qualified applicants from the appropriate in-house employment register.”
On November 26, 1997, the City moved to alter, amend, or vacate the court’s order. The court then entered an amended order, stating, in part:
“The Court finds that the [City] has two alternative remedies in this case as follows:
“1. The Court finds that the remedy that least affects the rights of all parties involved would be to keep [Harrison and Shelley] in their current positions while moving them up to the position of administrative assistant and keeping Essie Ashley in her present position.
“2. The Court finds that, if the above alternative is not selected as a remedy, that the [City] will have no choice but to remove Essie Ashley from her current position and to fill that vacant position by using the original inside register as it existed prior to the provisional appointment that started the grievance process of this case in motion.”
The City appeals.
Review by this court in cases such as this is, in effect, that of certiorari and is limited to the record made before the Board. If we conclude that substantial evidence existed to support the Board’s decision, we must uphold it. City of Dothan Personnel Bd. v. Herring, 612 So.2d 1231 (Ala.Civ.App.1992). “Substantial evidence” is defined as relevant evidence that a reasonable mind would view as sufficient to support a determination. Id., at 1233.
The rules and regulations at issue are Sections 2-60(3) and 2-60(4) of the City’s Personnel Rules and Regulations and Sections 14 and 17 of the Civil Service Act of Dothan, Alabama. The record shows that on February 12, 1996, Essie Ashley, an outside applicant, was temporarily appointed as administrative assistant to the fire chief under Section 17 of the Civil Service Act, because the top can *350 didates for promotion to administrative assistant declined to be interviewed. Section 17 provides:
“PROVISIONAL APPOINTMENTS. Whenever in the opinion of the Director it is impossible within a reasonable time to certify eligible persons for appointment to a vacancy in the Classified Service, the Appointing Authority may nominate a person for the vacancy to the Director. If such nominee is found by the director to have had experience and training which appear to qualify him for the position, the Director may authorize the Appointment of such person to such vacancy only until an appropriate eligible Register can be established and an Appointment made therefrom. Such Provisional Appointments shall be for a period of ninety (90) days and may, with the approval of the Director, be extended for an additional ninety (90) days, however, in no event shall a provisional Appointment be made for a period aggregating more than 180 days.”
Ashley testified that she had applied after seeing the newspaper advertisement for the position. She stated that she had submitted two applications — one to Darryl Mathews, the City’s “equal employment opportunity” officer, and another to the City. Ashley stated that she knew that she was a “temporary” employee and had never been guaranteed the position. She further stated that she had been told that all applications, including her own, would be given to the new fire chief for consideration.
The City argues that its Personnel Board had substantial evidence to determine that it was in the best interests of the merit system to fill the job vacancy from an open competitive list. We disagree.
Information before the Board shows that in December 1995, the City established an in-house employment register for the promotion of administrative secretaries to administrative assistants. Section 2-50 provides:
“Eligible Registers: Eligible registers shall contain the names of those applicants who are deemed by virtue of the examination process ... to be qualified to perform the duties required of a specific class. The names of the eligibles may be placed on such registers in order of the applicants’ final ratings on examinations.”
The fact that a person is included on the register means that that person has met the qualifications for the position and that he or she is eligible to be certified to that department head for an interview should a vacancy arise. The in-house register ranked Harrison and Shelley as two of the top three candidates eligible to be promoted to the position of administrative assistant.
Sections 2-60(3) and 2-60(4) of the City’s Personnel Rules and Regulations describe the procedures to be used in recruiting and selecting city employees.
“2-60(3) Promotions: It is the policy of the City of Dothan to fill classified positions with the most qualified personnel available. To allow for upward mobility, all vacancies and promotional positions shall be advertised internally utilizing promotional registers; job announcements for same shall be posted on all departmental bulletin boards. The City of Dothan shall, as an Equal Opportunity Employer, recognize its responsibility to insure equal opportunity in promotional decisions based only on valid and job oriented requirements.”
“2-60(4) Outside Advertisement: If an insufficient number of City employees in the Classified Service are interested in and/or qualified for a vacant position, the Personnel Director shall advertise for applicants in whatever manner will *351 provide a suitable number and quality of applicants including: advertisement of job announcements in local or national news media as appropriate; distribution of same to local employment agencies and/or colleges as required to attract the best qualified individuals; and utilization of eligible and reemployment registers.”
The rules and regulations further provide that it will fill classified positions “with the most qualified personnel available.” Further, “to allow for upward mobility, all vacancies and promotional positions shall be advertised internally utilizing promotional registers.” The City’s Civil Service Act likewise requires certification of, ranked in order, the top three City employees eligible for a promotion each time there is a vacancy. Jim Owen, the City’s personnel director, testified that the position in the fire department was not an entry-level position, but a “classified” position.[1] Owen further testified that an emergency situation arose: 1) when the current administrative assistant announced her retirement before the commissioning of the City’s new fire chief, Dennis Rubin; and 2) when the top two candidates eligible for promotion declined to be interviewed. Owen stated that Ashley had been temporarily appointed to the position in February 1996 so that she could be trained by the retiring administrative assistant to cover the day-to-day operations until Rubin could make an appointment. Owen stated that there are no established guidelines as to when the outside register is to be used and that he felt it was his responsibility to upgrade the applicant pool, because, he said, those who were on the in-house register at that time had, at most, minimum qualifications.
Jerry Gwaltney, the city manager, testified that when the previous administrative assistant announced her retirement, he felt that the situation was “critical enough” for him to make a temporary appointment until the new fire chiefs term began. Gwaltney stated that he checked Ashley’s references and hired her with the understanding that she would be a “temporary” employee.
The new fire chief, Dennis Rubin, testified that he knew that he would be hiring an administrative assistant and understood that someone had been temporarily put in the position until his term began. Rubin stated that he received the names of seven applicants for the position and that he reviewed the applications of all seven and interviewed all seven, including Harrison, Shelley, and Ashley. He stated that he decided to hire Ashley, based on her qualifications and his personal observation of her work habits during her temporary appointment.
The City, relying on Section 14 of its Civil Service Act, argues that it has the obligation to attract a competitive applicant pool, including members of racial minorities, and that it is irrelevant that the person appointed to the position was a member of a minority. Section 14 of its Civil Service Act provides:
“FILLING VACANCIES. When any vacancy occurs in the classified service, the director, subject to the approval of the personnel board, may direct the filling of such vacancy by appointment, promotion, reappointment, transfer or demotion, where practical.
“(a) Appointment: When it is necessary to fill a vacancy by appointment, the appointing authority shall submit to the director a personnel requisition con *352 taining a statement of the title of the position and the desired qualifications of the person to be appointed, and request the director to certify to him the names of persons eligible for appointment to the position. The director shall certify to the appointing authority the names of three ranking eligibles from the most appropriate register and, if more than one vacancy is to be filled, the name of one additional eligible for each additional vacancy, or, if agreeable to the appointing authority, all the names on the register, if there is less than the above required number.... In the event the requested number of eligibles cannot be certified to the appointing authority, he may [choose] from the remaining certified names or may elect to make a provisional appointment as provided in this act....
“(b) Promotion: Vacancies other than entry level positions shall be filled by promotion insofar as practicable, from the appropriate promotional register. The certification of individuals for promotion shall be the same as [provided] for in paragraph (a) above, with the exception that individuals certified to the appointing authority as many as three times shall not be removed from the promotional register.”
We conclude that the Board’s decision denying the grievances of Harrison and Shelley was not supported by substantial evidence. Although the City may have been justified in making the provisional appointment of Ashley, the record shows that the in-house register listed 11 applicants who had at least qualified for a promotion to administrative assistant. The City’s rules and regulations are clear with respect to the filling of non-entry-level vacancies. Owen and Gwaltney both testified that the vacant position in the fire department was not an entry-level position, but a classified position, and therefore called for the use of the in-house register.
AFFIRMED.
ROBERTSON, P.J., and MONROE, J., concur.
CRAWLEY and THOMPSON, JJ., dissent.

. "Classified” service, as defined in Section 1-40 of the City’s Personnel Rules and Regulations, shall "comprise all offices and positions in the City employ, now existing or hereafter created, except those positions specified 'Unclassified Service' by state laws.”